IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

EDMUND C. STOVER,

      Plaintiff,

v.                                      CASE NO. 6:12-cv-0734

MICHAEL J. ASTRUE[1],
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Brief in Support of Judgment on the Pleadings (ECF No. 10) and a Brief in Support of the Defendant's Decision (ECF No. 11).

Plaintiff, Edmund C. Stover, filed application on February 26, 2008 (Tr. at 135). In the application, Complainant alleged disability beginning January 1, 2007 (Tr. at 136). The claim was denied initially and upon reconsideration (Tr. at 55-59, 60-62). Claimant filed a written request for hearing on January 23, 2009. A hearing was held on October 19, 2010. Claimant attended the hearing via video in Parkersburg, West Virginia. In the Decision dated October 28, 2010, the Administrative Law Judge (ALJ) determined that Claimant was not entitled to social

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

security income benefits (Tr. at 17). On November 2, 2010, Claimant requested a review of the hearing decision (Tr. at 5). The Appeals Council notified Claimant on January 17, 2012, that his request for review was denied (Tr. at 2-4). On March 15, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g) (ECF No. 1). Plaintiff's Motion for Judgment on the Pleadings and Brief in Support was filed on July 3, 2012 (ECF No. 10). The Commissioner filed a Brief in Support of the Defendant's Decision On August 1, 2012 (ECF No. 11).

Under 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id*. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id*. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id*. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id*. § 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id*. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id*. § 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983) and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 11). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative joint disease of the lumbar spine. (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 21). The ALJ then found that Claimant has a residual functional capacity ("RFC") for light work, reduced by nonexertional limitations[2] (Tr. at 13). As a result, Claimant cannot return to his past relevant work. Nevertheless, the ALJ concluded that Claimant could perform jobs such as cleaner, laundry folder and cafeteria worker (Tr. at 16). On this basis, benefits were denied (Tr. at 9-17).

---

[2] Claimant is limited to occasional balancing, stooping, crawling, kneeling, crouching and climbing. Claimant may never climb on ladders, ropes or scaffolds. He is to avoid concentrated exposure to temperature extremes of cold, vibrations and hazards such as machinery and unprotected heights (Tr. at 13).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 1, 1964 (Tr. at 15, 18). Claimant graduated high school and completed additional training in food service, maintenance and security (Tr. at 238). He previously worked as a paper carrier from January 2001 to January 2008 (Tr. at 182). Claimant worked as a fast food restaurant cook from 1994 to 1998 (Tr. at 235). Claimant testified that he prepares a lot of the meals at home, performs light chores and mows the grass (Tr. at 413).

Claimant also does the dishes, watches tv, plays board games, feeds the pets, rides his bike, attends church every Sunday and builds models as a hobby (Tr. at 222, 223, 226). He does not have a driver's license. Claimant travels as a passenger in a car, on public transportation or by walking (Tr. at 226).

Medical Record

Claimant testified that he visits the Veteran's Administration Medical Center clinic (VA clinic) twice a year (Tr. at 411). He testified that he takes Etodolac, a nonsteroidal anti-inflammatory medication and Rosuvastatin to treat high cholesterol. (*Id.*) Claimant testified that he was in a bike wreck in January of 2007. (*Id.*) No evidence other than Claimant's self-report has been provided in regards to the bike wreck.

The medical records in this case consist of treatment notes from March 31, 2005, to November 4, 2008, at the VA clinic and consultative examinations by Rakesh Wahi, M.D., on January 29, 2007, and Sushil M. Sethi, M.D., on July 22, 2008.

VA Clinic

VA clinic notes on March 31, 2005, state that the patient was there for his yearly scheduled visit. The only medical history noted was chronic back pain which Claimant rated that day to be at level 5 on a scale of 1 to 10. Claimant had "no other problems or complaints" (Tr. at 399). Claimant stated he had not experienced any incidents of falling. The notes further report that Claimant "denies any pain from the back radiating into the legs, no weakness of lower extremities or bowel or bladder problem." (*Id.*) Notes state that there was not any atrophy of the lower extremities, Claimant's extremities were of equal strength and he did not have edema (Tr. at 400). Claimant was assessed as having chronic back pain and scheduled for a CT of the

5

lumbar spine. The CT was performed on April 28, 2005 (Tr. at 380). The CT report stated that there was degenerative arthritis involving the L5-S1 facet joint with vacuum phenomenon being present. There was no evidence of disc herniation at L5 or elsewhere within the lumbar spine.

VA clinic notes on June 3, 2005, state that Claimant was given a prescription of Tramadol to treat his back pain. Claimant reported that he was doing well and had no complaints. Claimant reported that he was feeling much better. He was assessed as having improved back pain (Tr. at 397). On June 1, 2006, Claimant reported no complaints or problems at his VA clinic visit. He stated "that overall he is doing well and his back pain is not bothering him as much anymore" (Tr. at 394). He reported that in colder weather his left knee causes him a "little discomfort but overall this is not [a]ffecting his work." (*Id.*) Claimant denied any redness, swelling or problems with range of motion in his left knee. He was assessed as having chronic back pain.

VA clinic notes from October 20, 2006, report that Claimant had no problems or complaints. He stated "that he has been doing well overall" (Tr. at 369). He had no complaints of muscle aches. On March 19, 2007, Claimant's clinic visit was for his routine eye exam. Claimant complained of blurred vision and sensitivity to light (Tr. at 337). On April 20, 2007, clinic notes state that Claimant had no complaints or problems and stated he had been doing well since his last visit (Tr. at 334). VA clinic notes from October 15, 2008, state that Claimant had no acute problems or complaints on that date (Tr. at 313).

Rakesh Wahi, M.D.

Dr. Wahi performed a Consultative Examination on January 29, 2007, at the request of the West Virginia Disability Determination Service in an earlier application Claimant had

6

submitted for benefits (Tr. at 362-366). Dr. Wahi stated that Claimant alleged back, hip and knee disorders, poor vision, "blackout spells" and pain. Claimant reported that he had been suffering from back pain ever since he was walking as a pedestrian and was "hit by a semi-truck approximately eight years ago." (*Id*.) Claimant asserted that his pain increases in intensity if he stands for longer than two hours. He reported that he could walk as far as two miles before needing to stop and rest due to pain. He claimed his ability to sit in one place was limited to four to six hours. Claimant reported he did not experience pain radiating down his legs. Claimant did not report any sleep problems related to the pain. Claimant stated during the examination that he felt pain in his hip and in his left knee. He stated that the pain in his left knee increases if he walks longer than two miles (Tr. at 363).

Claimant has not experienced a "blackout spell" but is concerned he may start experiencing them in the future because his mother experienced "blackout spells." (*Id*.) Claimant reported that his vision was poor when he does not wear his glasses, but even without the glasses, Claimant was able to do finger counting and recognize objects at a close distance. Claimant informed Dr. Wahi that his hobbies include making models, such as airplanes, boats and cars and woodworking. Claimant reported that he works as a paper delivery person in the morning and afternoon. Dr. Wahi noted that Claimant's upper extremity strength, lower extremity strength and grip strength were graded at 5 out of 5 bilaterally. Claimant's fine motor skill manipulation was unimpaired. Dr. Wahi's impression found that Claimant suffered from degenerative joint disease of the lumbar spine and myopia which could be corrected with glasses. Dr. Wahi's opinion stated:

> The claimant suffers from degenerative joint disease involving his lumbar spine, which is giving him severe subjective symptoms. There are no objective findings to accompany these subjective

> symptoms. The claimant also has severe symptomatology involving the lower extremities, as well as lower extremity joints without any accompanying objective restriction. Overall, the claimant appears to be able to take care of his activities of day-to-day living, as well as moderate lifting, including up to 49 pounds. (Tr. at 366)

<u>Sushi M. Sethi, M.D.</u>

Dr. Sethi performed a Consultative Examination on July 22, 200, at the request of the West Virginia Disability Determination Service (Tr. at 343-347). Claimant stated that the last time he had worked as a newspaper delivery person was in 2006. He further stated he had been doing odd jobs at home, like handicraft, making key rings and jewelry (Tr. at 343). Claimant reported back, knee and hip "problems." He asserted he has arthritis due to a motor vehicle accident many years prior. He stated he was walking to a store when he was "hit by a flatbed semitrailer." (*Id.*) He asserts that he was taken to a local hospital where x-rays were taken.[3] He reported that he takes an over the counter anti-inflammatory medicine. Claimant denied any weakness or paralysis. Claimant had not had any injections, surgeries or chiropractic treatment. Claimant's pain was "nonspecific." He reported that he was not taking prescription medicines as of the date of the examination.

Claimant asserted that he had blurred vision and the VA clinic had given him glasses three years prior. He stated he may need new glasses to correct his vision (Tr. at 344). Claimant's vision without glasses was reported as 20/20 in the right eye and 20/200 in the left eye. With glasses, Claimant's vision was 20/20 in both eyes.

Claimant listed past illness of chronic back pain, a motor vehicle accident and an injury to the knee in 1990. (*Id*.) His neurological abilities to grasp, pinch manipulation and fine

---

[3] No medical records or x-rays were submitted into evidence.

coordination were normal (Tr. at 345). His lower extremities showed moderate tenderness in the knees. He was able to work on his ankles and heels and he could squat. Dr. Sethi's impressions were that Claimant had a "history of chronic back pain after he sustained a motor vehicle accident. He has arthritic complaints of the back, hip and the knees." Dr. Seth also stated that Claimant may need new glasses.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that ALJ erred in failing to find that Claimant suffers from a severe impairment in his lower extremities, discrediting Claimant's testimony regarding the effects of his impairments and in relying upon hypothetical questions to a vocational expert (VE) (ECF No. 10). The Commissioner asserts that substantial evidence supported the ALJ's finding that Claimant had the Residual Functional Capacity (RFC) to perform light work and that the ALJ's hypothetical question to the VE elicited valid evidence of work that Claimant can perform (ECF No. 11).

The ALJ found that Claimant's medical condition of degenerative joint disease of the lumbar spine was a severe impairment. The ALJ found that due to "modest finding," Claimant's hip and knees condition was not severe in nature. The ALJ relied on Dr. Sethi's report to conclude that Claimant's vision was not severe in nature. As there was no medical record documenting Claimant's allegations of "blackout spells," the ALJ found it to be a non-medically determinable impairment (Tr. at 12).

Credibility

With respect to Claimant's argument that the ALJ wrongfully discredited Claimant's testimony, the Court proposes that the presiding District Judge find that the ALJ properly

9

weighed Claimant's subjective complaints of pain in keeping with the applicable regulations, case law and social security ruling ("SSR") and that his findings are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2012); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

A severe impairment must significantly limit the Claimant's ability to perform basic work activities. *See* 20 C.F.R. §§ 416.920(c) and 404.1520(c) (2012). The ALJ found that Claimant does have degenerative arthritis, a medically determinable impairment that could cause his alleged symptoms; however, Claimant failed to present evidence of compromise of a nerve root (Tr. at 12-14). Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with a RFC assessment limiting Claimant to light level exertion (Tr. at 13).

Dr. Wahi stated during his evaluation that although Claimant was reporting severe subjective symptoms from his degenerative arthritis, there were no objective findings to accompany these subjective symptoms. Claimant reported to Dr. Sethi and testified at the hearing that he was doing odd jobs, delivering newspapers and cutting grass for people. The ALJ found this work was not substantial gainful activity, however, it was noteworthy that Claimant was able to "perform these jobs without any apparent problem" (Tr. at 14). Claimant's testimony also indicated a wide range of daily activities. Further, the ALJ found Claimant's "social activities are also not indicative of someone as limited as the claimant alleges." (*Id.*) *See*, *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

While the ALJ must seriously consider a claimant's subjective complaints, it is within the ALJ's discretion to weigh such complaints against the evidence and to reject them. *See*, 20

C.F.R. § 404.1529 and *Craig*, 76 F.3d at 595. As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight").

Dr. Sethi reported Claimant's vision as correctable with glasses to achieve 20/20 vision bilaterally (Tr. at 333-344). The Fourth Circuit Court has held that if a symptom can be reasonably controlled by medication or treatment, it is not disabling. *Gross v. Heckler*, 785 F.2d 1163, 116 (4th Cir. 1986) *citing*, *Purdham v. Celebrezze*, 349 F.2d 828, 830 (4th Cir. 1965). Additionally, 20 C.F.R. § 404.1530 (2012), states that a claimant must follow treatment prescribed by a physician if the treatment can restore the claimant's ability to work. If a claimant does not follow the prescribed treatment without a good reason, claimant will not be found disabled.

Vocational Expert's Testimony

The Commissioner argues that substantial evidence supports the ALJ's finding that Claimant has the residual functional capacity (RFC) to perform work at a light exertion level[4] (ECF No. 11). In determining Claimant's RFC, the ALJ considered the opinion of Dr. Wahi. Dr. Wahi's evaluation concluded that "[o]verall, the claimant appears to be able to take care of his activities of day-to-day living, as well as moderate lifting, including lifting up to 49 pounds" (Tr. at 36). Dr. Sethi opined that Claimant's ability to work at physical activities may be slightly affected (Tr. at 345). The ALJ "granted the claimant the benefit of the doubt" and found that

---

[4] Claimant is limited to occasional balancing, stooping, crawling, kneeling, crouching and climbing. Claimant may never climb on ladders, ropes or scaffolds. He is to avoid concentrated exposure to temperature extremes of cold, vibrations and hazards such as machinery and unprotected heights (Tr. at 13).

Claimant's severe impairment of degenerative joint disease of the lumbar spine limited him to work at a light exertion level with the non-exertional limitations set forth above (Tr. at 15).

At the hearing, the ALJ asked Vocational Expert Olen Dodd if a hypothetical individual had the same age, education and work experience as Claimant and has the RFC to perform work at a light exertion level with the same non-exertional limitations stated before, could perform jobs in the national and regional economy? VE Dodd testified that the hypothetical individual could perform jobs such as a cleaner, laundry folder and cafeteria worker (Tr. at 418). Pursuant to SSR 00-4[5], the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner, DENY Plaintiff's motion for Judgment on the Pleadings and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

---

[5] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date: August 21, 2013

Dwane L. Tinsley
United States Magistrate Judge